James Alderson, and Ann his wife, by deed dated the 10th of July, 1712, reciting that Ann, at her marriage, was possessed of three slaves, and that by law they were real estate, bargained and sold the slaves to one Hunter for sixty years, if the said James and the negroes should so long live, in trust and to the use of the said James and Ann for their lives, and to the use of the survivor, if the negroes should so dong live ; with this proviso, that if Aon should die before James it should be lawful for her by will to dis *68 pose of the negroes after his death ; and with this further proviso, that if the negroes had any increase during the term, that they should be taken care of till they were fit to be removed from then-parents. The husband died first; the wife, who had made a will before his deafii, republished it afterwards, and by the will she has taken upon her, not only to dispose of these three negroes mentioned in the deed, but also their increase, to the plaintiff Elizabeth. The question is, whether as the husband died first, the wife had a power by this deed or otherwise, to dispose of these negroes or their increase ? When this deed was made, it was the general opinion that a woman’s slaves did not vest in the husband by the marriage. This was die construction of the act of 1705, by which slaves were first made real estate. It will, however, be allowed that this was a mistaken opinion and a wrong construction of the act j the explanatory act of 1727, having declared that where any slaves have been, or shall be conveyed, given or bequeathed, or have, or shall descend to any feme covert, tire absolute property is thereby vested in the husband. After repeating these words, I may venture to take it for granted, that the slaves of Ann Alderson vested in her husband by die marriage, and it will scarce be pretended, I presume; that the husband’s mistake as to his right, which appears in the recital of the deed, did at all lessen or destroy drat title. From these premises these two conclusions follow. 1. That the wife can have do pretence of right, but what she can derive from the gift or disposition of lire husband : and 2. That, as the husband had the absolute property in diese slaves, so much of that property in them and their increase, as was not disposed of by the deed now before us, remains in the husband, and upon his death must go to his representatives. The business then is to see how- far the property of these slaves, or their increase, is disposed of by this deed. It is scarce worth observing, that this deed is to be considered merely as the act of the husband, and it is well known that a feme covert cannot make a deed.in any case, except where she is'empowered by some particular law or agreement so to do. But as the wife here had really no interest in the thing conveyed, her joining or not joining in the deed cannot differ the case. The deed tíren, I conceive, ought to be considered thus. A: husband conveys his slaves to trustees for sixty years,- if lie should so long live, to the use of himself and wife, and the survivor for life, with power to the wife if she died first, to dispose of them by will after his death. I say nothmgbere of the second proviso, which regards the increase : that I shall consider by ¿md by. What is there more in this deed, than a limitation to the husband and wife for Efe, with a power to the. *69 wife to dispose upon the contingency of her dying in her husband’s life-time. If this contingency never happened, can she have a right to dispose by virtue of this power? Certainly not; and that is truly all the question in the case. There is certainly some difference between an absolute power and a limited one, or a power that is to arise upon some future contingency. If a man gives his executor power to receive a sum of money out of his estate, in case he leaves a daughter, this power cannot be executed if he leaves no daughter, because it is to arise upon that contingency and not otherwise. So here the power given to the wife is not a power of disposing at all events, but only upon the contingency of her dying in her husband’s life-time. The words of the deed are not only plain to this purpose, but it was apparently the intention of the parties, .for under the mistaken notion they were, that the slaves did not vest in the husband, they concluded that if the wife survived, she would by law have a power to dispose, and there could be no necessity to provide for that, hut only that she might dispose during the coverture, if she died first. Thus neither from the words of the deed, nor the intention of the parties, is there the least ground to infer, that an absolute power of disposing was designed to the wife ; but only a power upon a contingency, which not happening, she has no power of disposing by virtue of this deed ; and if she had none by the deed, she had none at all,, as I hope I have demonstrated. Let us consider a little further the nature of this deed. It is a conveyance to a trustee for sixty years, if the husband so long lived. This trust and term then, were to continue'no longer than the life of the husband; and so upon his death they both expired and determined, and consequently the power which was to be executed during the term., must cease and be void. Neither the trust nor the term, nor the power given the wife from the frame of this deed, could possibly subsist after the husband’s death. As to. the mistaken notion of the parties, with respect to tire right of these negroes, as this mistake could not alter or destroy the husband’s right, so> neither can it be any argument to give this deed a different construction or operation from what it would have had, if the husband had known it; perhaps if he had, he never would have executed this deed at all. If, therefore, we regard the operation of this deed in point of law, or if we regard the intention of the. parties in malting it, it is plain the wife had no power of disposing but upon the contingency of her dying in the;husband’s life-time, and therefore, her disposition to tire plaintiff is void. Equity will often supply a defective execution of powers, but I never yet read or heard that a court of equity would create new or different powers from those created by the *70 parties, or extend or enlarge them beyond what the words of the deed, or the intention of the parties would carry them; yet this is what must be contended for, to support the wife’s disposition in this case. The power created by this deed is upon a certain contingency which never happened, and yet they will have it that the wife may dispose hy virtue of that power. What is this but setting up a different power in the wife from that given her by the deed ? As to the increase of the three slaves, mentioned in the deed we have been speaking of, which are the other six slaves claimed by the plaintiff under the will of Ann Alderson, I really cannot conjecture what may be said in support of tire plaintiff’s title to them. The bill (whether designedly or not I cannot tell) does not mention those six slaves as the increase of the three, though I dare say . they will be granted to be such, but only sets forth that Ann Alderson devised the three slaves in the deed, and six others, without shewing her title to them. This is one of the causes of demurrer, that it is not suggested she had a right to the increase, or to dispose of them. I have already observed, and I hope it will be granted, that so much of the property of the three slaves and their increase, as is not disposed of by ire deed, remained in the husband, the whole property vesting in him by the marriage. Now it is plain from the tenor of the deed, as well as a particular proviso in it, that the increase were never intended to be within the trust thereby created. The term is limited for sixty years, if James Alderson and the three negroes should so long live. So that if the three negroes had died, the whole trust had determined. The proviso which gives tire wife a power of disposing upon the contingency mentioned, takes notice only of the three slaves, without saying any thing of the increase, all which is sufficient to shew that they were never intended to be comprised within the trust at all. But there is a second proviso which puts the matter beyond all doubt ; by this, there is an express provision concerning the increase, that they shall be allowed to remain .with their parents till they were fit to be removed. So that whatever the determination may he, with respect to tire wife’s right of disposing of the three negroes, I conceive the matter, as to the increase, will admit of no doubt or question. On the other side, it was urged, that the limitation of the trust being to the use of the husband and wife for life, and to the use of the survivor, that the wife surviving was well entitled to the slaves mentioned in the deed, and that the property of the increase must follow that of the parents.
And so it was decreed by the court.
Reportedly Edward Barradall, Esq.